## GUY vs. JAMES.

*Fourth District Court for San Francisco Co., Dec. T.*, 1857.

### CONSIGNEE—DISBURSEMENT—BOTTOMRY BOND.

The mere fact of a disbursement having been made by the consignee of a ship coupled with an authority to make disbursements is not sufficient to charge the owner for money supplied to the master, or any other person, where there is no proof, or from the character of the payment itself there is no presumption, that it was necessary for the use of the ship or beneficial to the owner.

A consignee in redeeming a bottomry bond made in *itinere* will be presumed to have acted in good faith in the absence of proof to the contrary.

Money paid for port charges, and in discharging the cargo will also be presumed to have been paid in good faith and be allowed as necessary charges against the ship in the absence of proof to the contrary.

This action was instituted on the 23d of August, 1855.

The object of it is to recover the sum of $3,737 for services and money, paid and performed by *Guy*, the plaintiff, for account of defendant. These services and advances were made and done by the plaintiff in June, July and August, 1854, as agent and consignee of the ship *Hibernia*, of which defendant *James* was the owner.

By charter party, dated April 21st, 1853, which was in evidence, it appeared that the *Hibernia* was to carry a cargo of coals from Cardiff, in Wales, to San Francisco; that she was to be addressed to charterer's agent who was to do the ship's business on usual terms, at the port of discharge, the " cargo to be brought and taken from alongside at merchant's risk and expense, and not exceeding what she can reasonably store and carry over and above her tackle, apparel, provisions and furniture; and being so loaded she shall therewith proceed to San Francisco, &c., and deliver the same on being paid at and after the rate of £4 10s sterling per ton of 20 cwts. delivered."

It was further made to appear that the vessel encountered a peril of the sea on the voyage and had to put into Valparaiso for repairs, where she took up money on bottomry. She arrived at this port on the tenth day of June, 1854, and the bottomry, amounting to $12,828, was paid, a few days after her arrival, by *Guy*.

By a letter of plaintiff, put in evidence by defendant, it appeared

that captain *Claverly*, (the master who brought the ship to this port, and who was afterwards succeeded by captain *Knox*,) had written for funds to pay the bottomry, and that on the 30th of June, 1854, he expected to receive them. On that day *Knox*, who had in the interim succeeded *Claverly*, repaid *Guy* the amount.

*Hepburn*, for plaintiff:

It is contended that we are not entitled to be repaid the amount advanced to discharge the bottomry, while yet we are to be debited with the same amount which we received from *Knox*. The first answer is that the peril of the sea and the general average being shown, the consignee, in a foreign port, was fully justified in paying the average, and it is for the defendant to show that it was fraudulent. But the second answer is that the circumstances under which the reimbursemeut of *Guy* by *Knox* was made, show conclusively that it was done under instructions from his principal and out of the funds which had been written for to pay the bottomry.

The position that plaintiff is not entitled to a credit for the advance made to captains *Knox* and *Claverly*, because he has offered no proof that they were necessary and that this necessity is the only ground on which the captain can bind the owner, is not tenable. The answer is that *Guy* was directed to do the ship's business, not by the authority of the captain, but by a direct contract with the owner himself; it appearing from the terms of the charter party that he was the owner's agent and was to do the ship's business on usual terms at the port of discharge. The reason why a consignee or material man, in order to recover against an owner for advances or supplies, is obliged to show that the advances or supplies were necessary, is that the rule only applies to cases where the transaction is made by the captain in the absence of the owner and without express authority from him. In such cases proof of necessity is indispensable, for it is out of this fact that arises, by implication of law, the consent of the owner to the act of the captain. But here *Guy* is the charterer's agent who is to do the ship's business at usual rates. He has then an express authority from the owner to disburse the ship, the charter party being equiva-

12

lent to a letter of instructions to that effect. Instead of being instructed to fit out a ship for a return voyage, suppose he had been ordered to buy and fit out a ship for a new voyage ; in order to recover in such a case, can it be contended that he would be obliged to show anything but the fact of his disbursements, or in other words, obedience to orders ? Improper conduct, unfairness, fraud, over-charging, &c., is all competent evidence for the defense ; but the fact of disbursement coupled with the authority to make it, is all that is necessary to establish the plaintiff's case.

The provision of the charter party relative to the loading of the ship at merchant's expense applies, as will be seen from its terms to the loading at Cardiff, and not to the unloading at San Francisco, and that charge is therefor properly laid to the ship.

*H. B. Janes*, for defendant, reply :

*First.* The creditor must prove the necessity and character of the advance to the master. *Abbott on shipping*, 135, 139 ; he cannot retain money of the owner for advances made to the master. *Buckley* v. *Packard*, 10 *Johns.* 421.

*Second.* A bottomry can only be made by the master upon a necessity to be clearly apparent, and this must be shown by the lender. *The " Fortitude,"* 3 *Sumner* 228.

I. A consignee as assignee of the lender, could not deprive the owner of this protection against fraud by the master, and especially when, as in this case, the bottomry is paid for the benefit of the consignee himself, for in this instance the consignee owned the cargo and did this to protect himself. *Smith's mercantile law*, 500.

II. The consignee, before he can recover advances on bottomry, must establish the necessity, the fairness of the transaction and that he was not a debtor to the ship at the time. *The " Fortitude,"* 3 *Sumner* 228 ; *Smith's mercantile law*, 500.

III. It is not shown that the instrument was a bottomry. It may, for aught that appears, have been the first of two bottomry bonds, and not entitled to priority of lien. As to the requisites of such a bond, see *Abbott on shipping*, 153, 158.

IV. Libellant must show all the requisites to a bottomry—none

can be presumed. *The* "*Aurora*," 1 *Wheat.* 96; *The* "*Fortitude*," 3 *Sumner* 228.

V. Before payment, libellant should have given notice to the master, and advised with him as owner's agent, or with the owner himself. *Smith's mercantile law*, 145. An agent cannot be reimbursed for payment made out of the regular course of business, unless he can show circumstances from which the principal's authority may be inferred. *Ib.* 156.

*Third.* The items of expense for discharging the cargo, are improperly charged to the ship's account, because the charter specifies that "the cargo shall be discharged at merchant's expense."

HAGER, J.—The defendant is the owner of the British ship *Hibernia*, which arrived at this port from Cardiff, England, under a charter party, with a cargo of coal consigned to the plaintiff.

The plaintiff brings this suit to recover for services and disbursements made as consignee, on account of defendant.

Some of the disbursements have been admitted, others are disputed and are of various classes :

1st. Among those claimed and disputed are several items of payments made, at different times, by the plaintiff to the master of the ship while in port. As a general rule, to sustain an action for such items, it must appear that the advances of money made to the master were for the use of the ship, and that they were warranted by the exigency of the case. There being no special directions from the owner, or evidence to prove the existence of any actual necessity for these supplies of money, or that they were expended or appropriated for the use of the ship, they cannot be allowed. It is true the plaintiff had authority to make disbursements ; but the mere fact of a disbursement having been made, coupled with the authority to make it, is not sufficient to charge the owner for money supplied to the master or to any other person, when by the character of the payment itself there is no presumption that it was for the benefit of the ship or owners. If either the payments to the master had been for the use of the ship, the plaintiff should have supplied the necessary proof to establish that fact.

2d. For money paid to discharge a bottomry bond given, *in itinere*, at Valparaiso, $17,727.

If this was an action upon the bottomry bond, the points and authorities cited and relied upon by defendant, would have. been applicable ; but here whether or not the hypothecation was justifiable or necessary, is not in controversy. The plaintiff was neither directly interested nor a party to it ; but upon the arrival of the ship at this port, as consignee and agent of the owners, and on behalf of all parties in interest, it was his duty to inquire into and determine the necessity of the hypothecation, and if he deemed it advisable, to discharge it without compelling the holders to resort to, or subjecting his principal to the expense of, an action. In making this payment, he should have acted in good faith and for the best interests of the owner ; and in the absence of proof, it will be presumed that he did so act. It is in evidence that he has been reimbursed for the whole or greater portion of the amount so paid by the master, and defendant claims that, inasmuch as plaintiff has not shown the necessity of the hypothecation, he is entitled to recover from the plaintiff, the sums paid by the master. I am unacquainted with any principle of law that would support so unjust a conclusion.

3d. For money paid for port charges and in discharging the cargo, etc.

By the charter party and bill of lading the ship was bound to discharge the cargo and deliver it alongside and the amounts paid by plaintiff for this purpose, if reasonable, is a proper charge against the owner. It may have been the duty of the crew to discharge the cargo, but in the absence of all proof except that payments have been made for this labor, I cannot infer that they were unnecessarily made. The crew may have deserted or been discharged and others may have been employed, (which I believe is customary at this port,) to discharge the cargo.

The fairness or reasonableness of the charge is not impeached, and I must presume the consignee acted in good faith for the best interest of the owner, and is entitled to recover the amounts paid for discharging the cargo. The same remarks, in some respects, are applicable to the amounts claimed for port charges and for adjusting, and commissions for collecting the general average. These are proper charges against the ship and owner, and should be allowed.

A finding is ordered according to views herein indicated.